UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS E. PEREZ, Secretary of Labor,<br>United States Department of Labor, | :<br>:<br>: |
| Petitioner, | : |
| v. | :   CASE NO. 3:15-mc-00031-CSH<br>: |
| LASERSHIP, Inc. DBA LASERSHIP, | :   APRIL 21, 2015 |
| Respondent. | :<br>:<br>: |

**RESPONDENT'S OBJECTION TO PETITION FOR ENFORCEMENT OF
ADMINISTRATIVE SUBPOENA DUCES TECUM**

LaserShip, Inc. ("LaserShip") respectfully opposes the Department of Labor's Petition for Enforcement of Administrative Subpoena Duces Tecum (the "Petition"). Over the course of the DOL's lengthy, thirteen-month investigation, LaserShip has been extraordinarily responsive to the DOL's numerous requests for documents, information and witness interviews. The DOL has now overstepped the proper bounds of its authority, however, by demanding that LaserShip produce the personal cell phone numbers of its independent contractors.

As set forth more fully below, the DOL has already contacted the independent contractors via various means, including written questionnaires sent to the addresses that LaserShip willingly provided to the DOL. Now, nearly a year after LaserShip informed the DOL that it did not believe it was proper to turn over the independent contractors' personal cell phone numbers, the DOL seeks enforcement of a subpoena for those numbers. This subpoena threatens to impinge on the legitimate privacy rights of the independent contractors, to fracture the relationship between LaserShip and the independent contractors, and to serve the improper purpose of

1

harassing and annoying individuals who have already decided not to participate further in the DOL's investigation. Moreover, the subpoena—which seeks redundant documents from remote time periods—is unduly burdensome on LaserShip, and is so indefinite as to preclude enforcement.

Accordingly, as set forth more fully below, the Court should deny the DOL's Petition and refuse to enforce the administrative subpoena.

## I. FACTUAL BACKGROUND

### A. *About LaserShip*

LaserShip, headquartered in Vienna, Virginia, has a Connecticut branch located in Meriden. Through this branch, LaserShip provides transportation logistics services, arranging for the delivery of packages throughout Connecticut for retailers, other businesses, and the general public. (Affidavit of David C. Salazar-Austin, attached hereto as Exhibit 1.) LaserShip operates by arranging for the delivery of packages through its use of independent contractors. (Exhibit 1.)

### B. *The U.S. Department of Labor's Investigation Commences*

On or about March 4, 2014, LaserShip received notice that the United States Department of Labor, Wage and Hour Division ("DOL") had initiated an investigation to determine if LaserShip was in compliance with the Fair Labor Standards Act ("FLSA"). (Exhibit 2.) The notice requested a wide variety of documents, but did *not* request the personal cell phone numbers of LaserShip's independent contractors. (Exhibit 2.)

### C. *LaserShip Complies with the DOL's Myriad Requests and Investigation Efforts*

In an effort to ensure full compliance with the DOL's investigation, LaserShip immediately opened its doors to the DOL investigation. LaserShip welcomed DOL investigator

Kelly Bosco to its Meriden facility on March 20, 2014, and again on May 5, 2014, and facilitated Ms. Bosco's investigation by setting up interviews with those individuals with whom Ms. Bosco requested to speak. (Exhibit 1.) Then, on April 2, 2014, LaserShip identified the independent contractors with whom it does business, and produced over 80 pages of IRS Form 1099s reflecting compensation paid to these independent contractors. (Exhibit 1.)

Almost immediately upon receiving this information—which contained the addresses of the independent contractors—Ms. Bosco began contacting the independent contractors for purposes of conducting her investigation. She sent letters to them (Exhibit 3), and according to her affidavit, she also contacted them by telephone. (Exhibit 4, ¶ 9.)

While Ms. Bosco was contacting the independent contractors with whom LaserShip does business, LaserShip diligently continued to produce documents and information in response to Ms. Bosco's many requests. Specifically:

- On **April 9, 2014**, LaserShip produced 1099s for independent contractors with whom the company had done business in 2012, along with other information requested by Ms. Bosco regarding the company owners, and the vendors with whom the company works.

- On **May 15, 2014**, LaserShip produced over 1600 pages of documents, primarily independent contractor agreements containing the names and addresses of the independent contractors.

- On **May 22, 2014**, LaserShip produced nearly 600 pages of additional independent contractor agreements.

- On **September 16, 2014,** LaserShip produced nearly 200 pages of documents responsive to Ms. Bosco's August 27th request for the "driver weekly payroll."

- On **December 12, 2014**, and **January 13, 2015**, LaserShip produced information regarding the company's owners and decisionmakers, as requested by Ms. Bosco.

(Exhibit 1.) In addition to these significant production dates, LaserShip provided additional requested information to Ms. Bosco on or about March 25, April 28, April 29, May 5, August 11,

3

and September 26. (Exhibit 1.)

Over the course of the DOL's thirteen-month investigation, LaserShip has consistently and completely responded to the DOL's often onerous requests for documents and information. Indeed, based on the DOL's Petition, it appears that in all of this time, the *only* category of relevant documents that LaserShip has not willingly produced—and that the DOL now seeks—is the personal cell phone numbers of LaserShip's independent contractors.

### D. The DOL Repeatedly Requests the Personal Cell Phone Numbers of the independent contractors with whom LaserShip Does Business

The DOL's initial notice of compliance visit and associated document requests did not seek the independent contractors' cell phone numbers. (Exhibit 2.) Rather, upon information and belief, Ms. Bosco first requested the independent contractors' personal cell phone numbers on May 2, 2014. (Exhibit 1.) On May 15, 2014, LaserShip responded in a letter to Nancy DiPietro, Assistant District Director, advising her that LaserShip was under no obligation to produce records it was not obligated to maintain under 29 C.F.R. § 516.2 (which itself only applies to employees, not independent contractors), and that LaserShip was concerned about intruding on the independent contractors' right to privacy. (Exhibit 1.)

The DOL did not raise the subject of the cell phone numbers again until January 2015, when Ms. Bosco contacted undersigned counsel and requested that LaserShip reconsider its position with regard to the cell phone numbers. (Exhibit 1.) LaserShip confirmed that it planned to stand by its earlier position, as first articulated in its letter of May 15, 2014. (Exhibit 1.)

On February 5, 2015, LaserShip again confirmed in a letter to the DOL that it did not intend to produce the requested cell phone numbers. (Exhibit 1.) The DOL then issued an administrative subpoena, to which LaserShip objected on February 23, 2015. (Exhibit 5.) This action followed.

4

## II.  LEGAL ARGUMENT

### A.  The DOL's Subpoena is Unreasonable and Should Not be Enforced.

As the United States Supreme Court has explained, the Fourth Amendment provides protection from overreaching administrative subpoenas, and the "gist of the protection is in the requirement…that the disclosure sought shall not be unreasonable." Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 208 (1946).  In this case, the DOL's subpoena is unreasonable and should not be enforced because: 1) the subpoena infringes on the privacy rights of third parties; 2) the subpoena threatens to fracture LaserShip's business relationships with its independent contractors; 3) the main purpose of the subpoena is improper; and 4) the subpoena is overly broad and unduly burdensome.

#### 1.  The DOL's Subpoena is Unreasonable Because it Infringes on the Privacy Rights of the Independent Contractors.

The independent contractors with whom LaserShip contracts have an inherent privacy right in their personal cell phone numbers.  Because the independent contractors have done nothing to warrant the DOL's investigation into their private affairs, and have not given permission to LaserShip to disclose their personal cell phone numbers, the Court should refuse to enforce the DOL's overly intrusive subpoena.

Although the privacy rights of corporations are limited, "the courts have recognized certain rights to privacy of *individuals*, variously said to be derived from the First, Fourth, Fifth, and Fourteenth Amendments." In re McVane, 44 F.3d 1127, 1136-37 (2d Cir. 1995) (internal citations omitted) (emphasis added).  "Among these protected rights is the individual interest in avoiding disclosure of personal matters."  Id.; United States v. Harrington, 388 F.2d 520, 524 (2d Cir.1968) (noting that, in enforcing an IRS subpoena, the "personal interest cannot be ... blithely brushed aside").

5

Thus, when faced with questions about the scope of an administrative subpoena, the Second Circuit has "not lost sight of the fact that agency subpoenas directed at individuals do implicate privacy rights." Id. at 1137. This is particularly so where third parties, such as LaserShip's independent contractors, have themselves done nothing to warrant the scrutiny of the DOL. Id. (noting that the Second Circuit is "more reluctant to enforce subpoenas when agencies have sought records of third parties who were not targets of the agency's investigation").

Personal cell phone numbers warrant privacy protection in ways that other contact information does not. Whereas home telephone numbers and addresses are often available via websites or phone books, private cell phone numbers are almost never listed publically. Websites that require an individual's personal information often demand a home telephone number, but make disclosure of a cell phone number optional. In seeming recognition of this fact, courts have often refused to require the production of individuals' cell phone numbers. In re Zyprexa Products Liab. Litig., No. MDL1596JBWASC, 2005 WL 2237789, at *2 (E.D.N.Y. Mar. 2, 2005) (permitting redaction, in mass tort litigation, of "confidential personal contact information such as home telephone numbers…pager and personal cell phone numbers…"); Performance Coal Co. v. U.S. Dep't of Labor, 847 F. Supp. 2d 6, 17-18 (D.D.C. 2012) (approving government's right to redact personal cell phone and home phone numbers from response to FOIA request, in part to avoid "an unwarranted invasion of [the individuals'] personal privacy"); Aguayo v. Bassam Odeh, Inc., No. 3:13-CV-2951-B, 2014 WL 737314, at *6 (N.D. Tex. Feb. 26, 2014) (ordering production of cell phone numbers *only* "[f]or individuals whose mail is returned as undeliverable).

The Court should refuse to enforce the DOL's subpoena in order to protect the privacy

6

rights of the independent contractors. LaserShip has already disclosed to the DOL the names and addresses of the independent contractors, and as Ms. Bosco readily admits, the DOL has already solicited the independent contractors' assistance through written correspondence, through telephone numbers available online, and even by asking other independent contractors to provide contact information for their peers. (Exhibit 4, ¶ 9.) There is no evidence that mail was returned as undeliverable, or even that earlier attempts to reach the independent contractors were unsuccessful—just that the response rate was low, or that the DOL did not receive the type of response it desired. If the independent contractors elected not to respond to the DOL's many inquiries, then that was their prerogative. The DOL's effort to seek a *fourth* means of contacting the independent contractors in no way outweighs the independent contractors' interest in maintaining the privacy of their personal cell phone numbers.

### 2. The DOL's Subpoena Is Unreasonable Because It Only Provides the DOL with a Means to Harass and Annoy Independent Contractors.

LaserShip has in no way obstructed DOL's efforts to contact the company's current and former independent contractors. As noted above, LaserShip produced the contracts that each independent contractor has entered into with the company, the IRS forms 1099 that LaserShip has issued to each of the independent contractors in question, and the address information for each of the independent contractors. With this information, the DOL admits that it has *already* reached out to the independent contractors in multiple ways, including by issuing written questionnaires to them.[1] (Exhibit 4, ¶ 9.) At this point, it is apparent that the DOL's purpose is not merely to contact the independent contractors in order to complete its investigation; it is to harass and annoy the independent contractors by contacting them yet again, in an effort to coerce

---

[1] Indeed, notably absent from the DOL's affidavits is any reference to the number of times each independent contractor has already been contacted. It is fair to assume that, based on information already provided, many of the independent contractors have already been contacted by the DOL three or four times—and yet it now seeks a means to contact the independent contractors *again*.

them into assisting the DOL with its investigation. At some point, after repeated attempts by the government to contact them over a one-year period, these independent contractors will unfairly be left with the impression that they *must* respond to the DOL's overtures, when in fact their participation in the DOL's investigation is completely voluntary. The administrative subpoena process should not be permitted to function as a method to *coerce* responses from the independent contractors.

This improper purpose renders the DOL's subpoena unreasonable. The independent contractors have, by all appearances, already declined to speak to the DOL's investigators. The Court should refuse to enforce the DOL subpoena, thus respecting the independent contractors' decisions not to respond to prior DOL inquiries and precluding the DOL from further harassing and annoying them via their personal cell phone numbers.

### 3. The DOL's Subpoena is Unreasonable Because it Would Force LaserShip to Fracture its Business Relationship with Valued Independent Contractors.

Like many similar companies, LaserShip's business model depends in large measure on the healthy relationship it maintains with its independent contractors. See, e.g., Velu v. Velocity Exp., Inc., 666 F. Supp. 2d 300, 303 (E.D.N.Y. 2009) (holding that driver was independent contractor where Velocity Express contracted with clients to handle shipping needs, and then "provides drivers for these clients' deliveries"); Browning v. Ceva Freight, LLC, 885 F. Supp. 2d 590 (E.D.N.Y. 2012) (where former and current delivery drivers brought putative class action against delivery service providers, court held that "the Plaintiffs are independent contractors for purposes of the FLSA"). The DOL's subpoena effectively seeks to fracture that relationship by insisting that LaserShip produce the independent contractors' personal cell phone numbers, despite the fact that the independent contractors have in no way authorized the disclosure of this

8

information.

The independent contractors entered into contracts with LaserShip to provide services, and are not—in their view, or LaserShip's—company employees. Because they are not employees, they did not willingly subject themselves to the investigative authority of the DOL. Indeed, even if they *were* employees, the law does not require LaserShip to maintain records regarding employees' personal cell phone numbers. See 29 C.F.R. Part 516 (enumerating documents employer is required to maintain, but not referencing personal cell phone numbers). As a result, the independent contractors have no expectation that the company is going to divulge their personal cell phone numbers to the government, and certainly not that the company will do so after the DOL has already made multiple efforts to reach the independent contractors by mail, by publically listed telephone numbers, and through their colleagues. In short, the independent contractors have not authorized LaserShip, implicitly or explicitly, to disclose their personal cell phone numbers.

LaserShip is justifiably cautious about the information it shares about its independent contractors. The Court must protect the company's relationships with these third parties by not requiring LaserShip to turn over their personal cell phone numbers.

### 4. The DOL's Subpoena is Overly Broad and Unduly Burdensome.

Finally, the DOL's subpoena is unreasonable because it is overly broad and unduly burdensome. Specifically:

- It seeks information regarding individuals whose potential claims for unpaid wages fall outside the applicable statute of limitations. In the absence of willfulness—of which there is no evidence in this case—the applicable limitations period is two years. See 29 U.S.C.A. § 255. Despite this fact, the DOL seeks cell phone records for individuals dating back to March 2012, more than *three years* ago.

- In addition to information about independent contractors with whom LaserShip currently has a business relationship, it also seeks information about independent contractors who *formerly* did business with LaserShip. To gather this information, LaserShip would have to ask its IT department to write new code to extract phone numbers from deleted independent contractor records. (Exhibit 1.) This effort is simply not warranted for the minimal benefit the DOL might receive *if* the records can be located, *if* the DOL in fact calls the former independent contractors, *if* the phone numbers for former independent contractors are still accurate, and *if* the former independent contractor is willing to respond to the DOL—which, given their silence to date, they appear not to be.

- To avoid any misapprehension, the DOL appears to assume that LaserShip in fact has cell phone numbers for each independent contractor, and that the company has maintained records of these numbers since 2012. This is incorrect. Since 2012, LaserShip has not been consistent in the practice of obtaining and recording independent contractors' cell phone numbers. (Exhibit 1.) It may also be the case that numbers were recorded by LaserShip incorrectly, or that certain independent contractors declined to provide updated cell phone numbers. In short, LaserShip cannot produce information it does not collect or maintain.

For these reasons, the subpoena is overly broad and places undue burden on LaserShip. It is thus unreasonable, and should not be enforced.

### B. The DOL's Subpoena is Too Indefinite in Scope to be Enforced.

As the Supreme Court has recognized, an administrative subpoena is not enforceable if it is too indefinite. See U.S. v. Morton Salt Co., 338 U.S. 632, 652 (1950). Here, the DOL's subpoena is too vague and ambiguous to allow LaserShip to respond with reasonable certainty that it is providing the documents requested.

First, the DOL seeks documents regarding individuals who are employed, or have been "suffered or permitted to work for LaserShip…." (Exhibit 5.) The Connecticut Minimum Wage Act defines employees as "any person suffered or permitted to work by an employer." Conn. Gen. Stat. § 31-71a (2015). As LaserShip has repeatedly made clear to the DOL, the company denies that the independent contractors are employees under federal or state law. LaserShip cannot respond to the subpoena with information about independent contractors when the DOL's

10

request is explicitly framed as seeking information about *employees*. Otherwise, the DOL's subpoena would function as a backdoor attempt to induce LaserShip into admitting that it employs independent contractors, when in truth these independent contractors contract to provide services for the company.

Second, the subpoena requests information regarding individuals who "work" at LaserShip's Meriden, Connecticut facility. To the extent the subpoena is interpreted to refer to the independent contractors, these individuals do not "work" in Meriden. They provide delivery services for LaserShip within the State of Connecticut. There are no individuals who fall within the scope of the DOL's subpoena as it is presently written.

Third and finally, as LaserShip has explained to the DOL, there are many independent contractors who entered into contracts with LaserShip, but never provided any services to the company. It is not clear whether the DOL's subpoena would require the production of cell phone numbers for these individuals.

For these reasons, the DOL's subpoena is too vague and ambiguous to be enforced.

### III. CONCLUSION

For the reasons set forth above, the Court should refuse to enforce the subpoena, and deny the DOL's unwarranted demand to recover the costs associated with seeking enforcement of the subpoena.

        DEFENDANT,
        LASERSHIP, INC.


By:  */s/ David C. Salazar-Austin*
    David C. Salazar-Austin (ct25564)
    Jackson Lewis PC
    90 Statehouse Square, 8th Floor
    Hartford, CT  06103
    Tel: (860) 522-0404
    Fax: (860) 247-1330
    salazard@jacksonlewis.com

CERTIFICATION OF SERVICE

I hereby certify that on April 21, 2015, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


                                                    */s/ David C. Salazar-Austin*
                                                    David C. Salazar-Austin