UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

THOMAS E. PEREZ, Secretary of Labor,
United States Department of Labor,

            Petitioner,                                    3:15-mc-00031 (CSH)

   v.

LASERSHIP, INC., DBA LASERSHIP,

            Respondent.

RULING ON PETITIONER'S STATEMENT
OF REASONABLE ATTORNEYS' FEES AND EXPENSES

HAIGHT, Senior District Judge:

On September 18, 2015, the Court ordered Respondent LaserShip, Inc. ("LaserShip") to comply with Petitioner's (the "DOL") administrative subpoena and to pay the DOL's attorneys' fees and costs in bringing this enforcement action (the "Ruling").[1] The instant ruling resolves the DOL's request for fees and expenses. For the reasons that follow, the Court declines to award the DOL the amount it requests and directs payment by LaserShip of a lesser amount.

I.    Background

In 2014, the DOL began investigating LaserShip, a provider of courier services, on the suspicion that LaserShip was improperly classifying its drivers as "independent contractors" rather than "employees." As part of that investigation, the DOL requested from LaserShip the cell phone numbers of LaserShip's drivers, which LaserShip refused to provide. Ultimately, the DOL issued LaserShip an administrative subpoena duces tecum, to which LaserShip objected. Faced with such objection, the DOL brought a petition in this Court, seeking enforcement of its subpoena (the

---

[1] Familiarity with the Ruling is assumed and is described only as necessary.

"Petition").

In the Ruling, the Court ordered LaserShip to comply with the subpoena, rejecting LaserShip's objections that it was unreasonable and indefinite.  The Court also held that LaserShip's objections were neither "substantially justified" under Fed. R. Civ. P. 37(a)(5)(A), nor "warranted under existing law [and could not be and were not] supported by good faith argument for extension, modification or reversal of existing law" under Local Rule 37(c).  Doc. 11, at 12-13.  The Court thereby ordered LaserShip to pay the DOL's costs and expenses pursuant to the above cited provisions of the federal and local civil procedure rules.  The Court solicited and received full briefing from the parties as to the amount of fees and expenses to which the DOL is entitled.  Docs. 12, 14-17.  This ruling resolves the parties' dispute as to that amount.

## II.    Standard for Attorneys' Fees

Courts evaluating a request for attorneys' fees must conduct a "lodestar analysis, which calculates reasonable attorneys' fees by multiplying the reasonable hours expended on the action by a reasonable hourly rate." *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 108 (2d Cir. 2014).  Proffered hours are reasonable if "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).  As to the hourly rate, a district court has discretion but should begin generally with "the prevailing market rates in the relevant community." *Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010) (internal quotation omitted).

"Although there is a strong presumption that the lodestar figure represents a reasonable fee, the district court may, in its discretion, adjust the lodestar based on a variety of factors," but, "must state its reasons for doing so as specifically as possible." *Ayres v. 127 Rest. Corp.*, 1999 WL

1295335, at *1 (2d Cir. Dec. 23, 1999) (internal quotations, citations, and alterations omitted).  For example, "in dealing with items that are 'excessive, redundant, or otherwise unnecessary, . . . the [district] court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'" *Hines v. City of Albany*, 613 F. App'x 52, 54-55 (2d Cir. 2015) (quoting *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)).  Likewise, a Court may deduct a percentage of hours where proffered time entries are overly vague.  *Kirsch*, 148 F.3d at 172-73.

In evaluating a movant's proffered evidence supporting its attorneys' fees request, this Circuit has long followed the dictates of Judge Newman's opinion in *New York State Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148, 1154 (2d Cir. 1983):

> Hereafter, any attorney—whether a private practitioner or an employee of a nonprofit law office—who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records.  . . .  All applications for attorney's fees . . . should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done.

The Court of Appeals subsequently clarified its use of the word "normally" in *Carey*, holding that while it "indicates that we intend to leave the district courts with some limited discretion to make exceptions to the hard-and-fast rule," *Carey* nonetheless "sets out unequivocally that absent unusual circumstances attorneys are required to submit contemporaneous records with their fee applications."  *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010).  "In other words, *Carey* establishes a strict rule from which attorneys may deviate only in the rarest of cases."  *Id.*

## III.   The DOL's Statement of Reasonable Attorneys' Fees and Expenses

In its fees statement [Doc. 12], the DOL identifies the following work hours (and

concomitant hourly rates) for which it seeks reimbursement:

| Name | Hours | Rate | Subtotal |
|------|-------|------|----------|
| Attorney Salzberg | 46.75 | $300 | $14,025 |
| Attorney Pedulla | 24.12 | $200 | $4,824 |
| Attorney Felsen | 1 | $300 | $300 |
| Attorney Hyman | 17.5 | $300 | $5,250 |
| Paralegal Quinn | 13 | $100 | $1,300 |
| **Subtotal** | **102.37** | **N/A** | **$25,699** |

From the subtotal of $25,699, the DOL offered to reduce its request by 15%, given, as discussed *infra*, the "non-contemporaneous method [with which it] determin[ed] the nature of the work performed." Doc. 12, at 6. In its reply brief, it then offered a further 3% reduction for potentially vague time entry descriptions, as well as another $1,000 on the chance that certain hours were not reimbursable because they were spent reconstructing the nature of work. Doc. 16, at 8-9. Therefore, in total, the DOL asks for $20,188.83 in attorneys' fees, and further requests $233.15 in costs. The DOL thereby seeks an award of $20,421.98.

To arrive at the number of compensable hours they expended on this matter, the DOL's representatives reviewed their contemporaneous time records documented in "Time Entry Reports" on the DOL's "Matter Management System" ("MMS").[2] *See* Doc. 12-1 Ex. A. The DOL filed with the Court print-outs of these records, which, for each representative, clearly indicate: (i) the matter worked on; (ii) the date the work was conducted; and (iii) the time spent working on that matter. *Id.* However, the DOL did not submit contemporaneously-drafted descriptions of the nature of the work its representatives performed. In fact, it freely admits that its "representatives did not contemporaneously record the nature of the work that they performed in this case." Doc. 17, at 2.

_____

[2] As discussed, *infra*, this is true for all DOL representatives except Attorney Felsen, who admitted that he does "not formally record [his] hours in the MMS System." Doc. 12-3 ¶ 3.

Rather, in forming the fees petition, the DOL representatives largely "relied on their Matter Management System records and email records *to reconstruct* the nature of the work they performed on particular dates."  Doc. 12, at 6 (emphasis added).[3]  However, the DOL does not seek reimbursement for time spent reconstructing the nature of the work performed.  Doc. 12, at 6 n.1; Doc. 12-1 ¶ 7; Doc. 12-4 ¶ 4.  Nor does it seek reimbursement for hours it was unable to reconstruct.  Doc. 12-2 ¶ 7.

The DOL also acknowledges that not all of Attorney Pedulla's time is reimbursable, reducing by 50% its request for his fees in light of the fact that he began working on the case only when Attorney Salzberg was incapacitated due to illness.  The DOL posits these hours are not reimbursable because they involved work "that likely would not have been spent on this matter had there not arisen the need to bring Attorney Pedulla into the case."  Doc. 12, at 4-5.

## IV.    LaserShip's Objections to the DOL's Fees Petition

The Court will address the merits of LaserShip's objections below, but summarizes them briefly here.  LaserShip argues that:  (i) the fees petition should be rejected entirely because it seeks unprecedented sanctions for a "routine discovery dispute"; (ii) the fees petition should be rejected entirely because of the failure to keep adequate contemporaneous records, and that the ones the DOL did keep are "meaningless"; (iii) the DOL's fees should be reduced because its time entries are vague, redundant, or document unnecessary work; and (iv) the DOL cannot recover for time spent

---

[3]  Initially, the DOL represented that MMS "does not allow users to record the specific nature of the tasks performed" and "does not capture the particular tasks [the DOL representatives have] performed."  Doc. 12, at 5.  However, the DOL later acknowledged that to be incorrect, and that MMS "does in fact have a 'Comments' field in which the nature of the work performed in this case could have been recorded."  Doc. 17, at 1.

preparing the fees petition.  Doc. 15.  LaserShip thereby argues that, at the least, the DOL's request

should be reduced by 90%.  *Id.*, at 9.

## V.      Analysis of Reasonable Attorneys' Fees

As discussed above, in evaluating the DOL's request for attorneys' fees, this Court:

> [M]ust: (1) determine the reasonable hourly rate; (2) determine the
> number of hours reasonably expended; (3) multiply the two to
> calculate the presumptively reasonable fee; and (4) make any
> appropriate adjustments to arrive at the final fee award.

*Trustees of the I.B.E.W. Local Union No. 488 Pension Fund v. Norland Elec., Inc.*, 2015 WL

3581011, at \*4-\*5 (D. Conn. June 5, 2015) (internal quotation omitted).

### A.      Reasonable Hourly Rate

The DOL requests $300 per hour of work by its more senior attorneys (Salzberg, Felsen, and

Hyman); $200 for its more junior attorney (Pedulla); and $100 for its paralegal (Quinn).  Doc. 12,

at 6-9.  LaserShip makes no objection to these rates—and the Court thereby assumes it has none.

*See Handschu v. Special Servs. Div.*, 727 F. Supp. 2d 239, 246 (D. Conn. 2010) ("if [non-movant's]

Counsel believed that any of the [movant's] Counsel was not entitled to be compensated at an

hourly rate of $400, they should have said so and why").  Moreover, any objection would be without

merit.  *See*, *e.g.*, *Tapia v. Mateo*, 96 F. Supp. 2d 1, 96 F. Supp. 3d 1, 6 (D. Conn. 2015); *Trustees*

*of the I.B.E.W. Local Union No. 488 Pension Fund*, 2015 WL 3581011, at \*5.  The Court accepts

the hourly rates proposed by the DOL.

**B.    Hours Reasonably Expended[4]**

**1.    Attorney Salzberg**

The DOL seeks reimbursement for 46.75 hours of work performed by Attorney Salzberg at a rate of $300 per hour.[5]  Doc. 12, at 10.  The Court has reviewed Attorney Salzberg's log of tasks performed [Doc. 12-1 Ex. B] and finds that the hours spent were reasonably expended.

LaserShip argues that the DOL cannot recover for the 8.5 hours that Attorney Salzberg spent working on the fee petition itself.  Doc. 15, at 8.  In support, it relies on *East Point Systems, Inc. v. Steven Maxim, S2K, Inc.*, 2015 WL 2381079 (D. Conn. May 18, 2015).  *Id.* (arguing that *East Point Systems* is "the precedent of this district, which makes clear that time entries related to the preparation of fee petitions are not recoverable.").

LaserShip blatantly misrepresents the law in this Circuit.  In *East Point Systems*, Judge Bolden, without the benefit of any legal briefing as to the plaintiffs' fees request,[6] filed a short order as to that request that, *inter alia*, struck "time entries for preparing the summary of expenses" under the principle that "billing records [that] do not relate to the 'making' of the motion to compel" are not recoverable.  *Id.*, at *1.  However, Judge Bolden (having received no assistance from counsel) erred in applying that broad principle in light of the more specific principle that expenses incurred

---

[4]  The Court assumes, only for the present section, that the descriptions of the nature of the work done were drafted contemporaneously with the hours worked and are not impermissibly vague.  The Court will then address these potential deficiencies in the following section.

[5]  The DOL's contemporaneous time records indicate Attorney Salzberg worked 51.50 hours in this action.  Doc. 12-2 Ex. A.  However, the DOL does not seek reimbursement for 4.75 hours spent reconstructing the nature of the work Attorney Salzberg performed.  Doc. 12-1 ¶ 7

[6]  In fact, the non-moving party had not even appeared in the relevant proceeding.  2015 WL 2381079, at *1.

in compiling an attorneys' fee petition *are* recoverable—a principle that is indisputably the law of this Circuit.  As the Second Circuit made clear when it expressly adopted this rule from the First and Third Circuits:

> 'If an attorney is required to expend time litigating his fee claim, yet may not be compensated for that time, the attorney's effective rate for all the hours expended on the case will be correspondingly decreased . . .  Such a result would not comport with the purpose behind most statutory fee authorizations.'

*Gagne v. Maher*, 594 F.2d 336, 343-44 (2d Cir. 1979) (quoting *Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978).  Following *Gagne*, the Second Circuit has routinely and consistently held that time expended in litigating a fee petition is reimbursable.  *See, e.g.*, *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 143 (2d Cir. 2007) ("it is apparent the Panel failed to award Porzig any attorney's fees whatsoever for the time his attorney spent in District Court successfully litigating his statutory right to the fees," "fees which . . . were mandatory."); *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999) ("a reasonable fee should be awarded for time reasonably spent in preparing and defending an application for § 1988 fees"); *Valley Disposal, Inc. v. Cent. Vt. Solid Waste Mgmt. Dist.*, 71 F.3d 1053, 1059 (2d Cir. 1995) ("[O]ur decisions require a district judge to evaluate the costs of preparing the § 1988 motion [for attorneys' fees] no different from the costs of litigating the underlying case.").[7]

---

[7]  Given this overwhelming and clear authority from the Court of Appeals, it is apparent that LaserShip's argument here extends beyond mere meritlessness into frivolity and its more troublesome companion, an intent to mislead.  It would not be the first time that LaserShip could be accused of such conduct.  *See* Doc. 11, at 8 n.4 (discussing LaserShip's blatant mischaracterization of certain case law); Doc. 11, at 8-9 (addressing LaserShip's entirely unsupported argument that the DOL issued its subpoena for an improper purpose).

The DOL has demonstrated that Attorney Salzberg reasonably expended 46.75 hours of reimbursable work with respect to this litigation.

### 2.    Attorney Pedulla

The DOL seeks reimbursement for 24.12 hours of Attorney Pedulla's work at a rate of $200 per hour.  Doc. 12, at 10.  However, according to the DOL's submissions, he worked a total of 55.25 hours.  Doc. 12-2 Ex. A (47.25 hours on the Petition); Doc. 12-2 ¶ 7 (8 hours on the fees request).[8] From there, the DOL subtracts 2.75 hours worked on March 11, 2015, because Attorney Pedulla was unable to sufficiently reconstruct the nature of that day's work.  Doc. 12-2 ¶ 7.  The DOL then subtracts another 4.25 hours for time spent "reviewing the case file and Attorney Salzberg's prior work on the case," hours which "can be viewed as unnecessary or redundant."  Doc. 12 at 4.

Now at a total of 48.25 hours, the DOL then posits that it "will reduce Attorney Pedulla's hours by fifty percent for the[] potential redundancies" created when Attorney Pedulla took over for Attorney Salzberg while she experienced health issues.  Doc. 12, at 5.  Thus the DOL arrives at 24.12 hours.  However, unlike the other reductions of Attorney Pedulla's hours, the DOL does not identify precisely which 24.13 hours are redundant and therefore not reimbursable.[9]  Rather, it

---

[8]    Attorney Pedulla failed to provide any contemporaneous records as to the 8 hours working on the fee petition.  In his reconstructed log, he claims to have worked on the fee petition for four hours on each of September 30 and October 2.  Doc. 12-2 Ex. B.  However, these entries do not appear on Attorney Pedulla's contemporaneous MMS time sheet, whose latest entry is August 26.  Doc. 12-2 Ex. A (showing a total of 47.25 hours for Attorney Pedulla). This provides an independent basis to deny reimbursement as to these 8 hours.

[9]    In its brief, the DOL identifies certain exemplary dates that contain potentially redundant time entries.  *See* Doc. 12, at 4-5.  For example, the DOL identifies March 12, 2015 as a date with a redundancy, specifically, Attorney Pedulla's entry, "[r]eview and edit petition and legal memorandum drafted by Susan Salzberg."  However, on that day, Attorney Pedulla also "read case law and perform[ed] legal research."  Doc. 12-2 Ex. B.  Those two activities comprised 10.75 hours, but the DOL provides no way for the Court to allocate which of those hours were spent on the redundant activity.  Regardless, the DOL's use of "*see, e.g.*" [Doc. 12, at

appears the DOL views the 50% reduction as a compromise to address something it acknowledges requires a reduction but that is difficult to quantify.  Nevertheless, as this Court has previously done when evaluating an attorneys' fees petition, the Court "reject[s] that seeming compromise offer because the Court does not bargain with parties."  *Handschu*, 727 F. Supp. 2d at 246.  Without proper contemporaneous documentation as to which hours expended by Attorney Pedulla were in fact redundant, the Court cannot simply accept the DOL's post-hoc assertion—submitted not via sworn affidavit but within its brief—that the true figure is 50%.

In light of this deficiency, and since the DOL acknowledges that Attorney Pedulla's redundant hours are not reimbursable, the Court has no basis in any properly kept contemporaneous records to evaluate the reasonableness of the hours spent by Attorney Pedulla in this case.  The request for reimbursement as to Attorney Pedulla's hours is denied.

### 3.    Attorney Felsen

The DOL seeks reimbursement for 1 hour of Attorney Felsen's work.  However, unlike the other DOL representatives, Attorney Felsen admits that he did not keep contemporaneous time records of any sort.  Doc. 12-3 ¶ 3.  Failing to maintain *any* contemporaneous time records, the DOL is precluded pursuant to *Carey* from recovering fees as to his work.  The request for reimbursement as to Attorney Felsen's 1 hour is denied.

---

4-5], to identify dates with potential redundancies necessarily implies that it has not identified all dates that contain redundancies.

**4.      Attorney Hyman and Paralegal Quinn**

The DOL seeks to recover for 17.5 hours of Attorney Hyman's work at a rate of $300 per hour and for 13 hours of Paralegal Quinn's work at a rate of $100 per hour.[10]  Doc. 12, at 10.  The Court has reviewed the logs of tasks performed by Attorney Hyman and Paralegal Quinn and finds that the hours spent were reasonable.

**C.      Conclusion as to Hours Reasonably Expended**

Prior to any adjustments, the Court determines that the DOL has spent 77.25 hours in reasonably expended and documented time on this litigation, amounting to $20,575.[11]

**D.      Adjustments to Attorney's Fees**

**1.      Lack of Contemporaneous Records As to the Nature of the Work**

As discussed, the Court of Appeals is clear as to what a petitioner for attorneys' fees must proffer in order to recover:

> All applications for attorney's fees, whether submitted by profit-making or non-profit lawyers, for any work done . . . should normally be disallowed unless accompanied by ***contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done***.

*Carey*, 711 F.2d at 1154 (emphasis added).

It cannot be disputed that the DOL submitted contemporaneous records indicating, for each of its representatives (excepting Attorney Felsen), the date and hours expended on the instant matter.  Doc. 12-1 Ex. A.  However, it is also undisputed that the DOL did *not* submit

---

[10]  For unexplained reasons, the DOL does not seek reimbursement for 1.5 hours of work performed by Paralegal Quinn on September 22 and September 28.  *See* Doc. 12-1 Ex. A.

[11]  $14,025 for Attorney Salzberg (46.75 hours at $300/hour); $5,250 for Attorney Hyman (17.5 hours at $300/hour); and $1,300 for Paralegal Quinn (13 hours at $100/hour).
As discussed in text, the DOL cannot recover for time spent by Attorneys Pedulla and Felsen.

-11-

contemporaneous records indicating "the nature of the work done," and, rather, submitted reconstructed descriptions of such work. Both parties understand that records lacking contemporaneously prepared descriptions of the work done contravene *Carey*'s mandate. The dispute centers on the effect of this deficiency.

LaserShip focuses on *Carey*'s insistence that contemporaneous records are a "prerequisite for attorney's fees" and argues that the DOL is thereby precluded from any reimbursement. Doc. 15, at 4. For its part, the DOL focuses heavily on the fact that it is a government agency with no paying clients, and thereby argues that its fees should simply be reduced by a matter of 15%:

> [DOL] lawyers in no instance have clients that they will need to bill on an hourly basis or to whom they will need to provide contemporaneous detailed hourly accounts of the nature of the work they perform. To require the Secretary's attorneys to keep contemporaneous records of the nature of their work would create a substantial administrative burden on the Secretary's lawyers and those records would only be used in the rare circumstance of supporting a fee petition.

Doc. 16, at 6.

However, the DOL cites to no authority—and the Court is aware of none—for a looser standard as to a government agency's maintenance of contemporaneous time records when that agency moves for attorneys' fees. In fact, such a rule would make little sense. The Court of Appeals' goal in *Carey* was not to incentivize litigants to keep adequate records as a matter of course. Rather, its goal was solely to assist district courts in their assessments of fees petitions, reflecting the concern that a motion court cannot evaluate properly whether a fees request is reasonable on the basis of non-contemporaneous records. *See Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir. 1986) ("the records' importance is so critical in determining a reasonable fee"). Whether or not the records proffered to the motion court are maintained by a lawyer with paying clients has

-12-

no affect on that concern. This is no doubt why, in *Carey*, the Court of Appeals determined that contemporaneous records are a required element of a fee petition from "*any* attorney—whether a private practitioner *or an employee of a nonprofit law office*." 711 F.2d at 1148 (emphasis added).

Nevertheless, the Court does not view *Carey* as a complete bar to recovery of attorneys' fees in this instance. The DOL did in fact submit contemporaneous time records which satisfied most of the required characteristics of such records, as announced in *Carey*. Allowing some fees in this instance finds support from the Second Circuit. In *Scott*, the court seemed to accept in principle the (albeit few) post-*Carey* examples where recovery of attorneys' fees was permitted "in the absence of full contemporaneous records" where the movant "maintained at least *some* contemporaneous records." 626 F.3d at 133 (emphasis in original). As discussed, it cannot be disputed that the DOL did maintain "some" contemporaneous records.[12] Admittedly, the cases referred to in *Scott* did not involve a situation in which, as here, contemporaneous records were maintained and produced, but entirely failed to account for one of the required characteristics of proper records. Nevertheless, in light of the apparent (yet limited) flexibility contemplated by the language in *Scott*, as well as the fact that the DOL representatives swore via affidavit as to the accuracy of the reconstruction of the nature of the work performed[13]—a process that produced descriptions of such work sufficient for the Court to evaluate their reasonableness—the Court exercises its discretion in allowing some fees in this instance. *See Broadcast Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 661

---

[12] Therefore, the Court need not demonstrate that this case is one of the "rare circumstances" envisioned by the Court of Appeals in which "an award of fees [is] warranted even in the *total absence* of contemporaneous records." *Scott*, 626 F.3d at 133 (emphasis added).

[13] *See, e.g.*, Doc. 12-1 (Attorney Salzberg "declar[ing] under penalty of perjury" that "[t]he Log set out in Exhibit B [describing the nature of the work done within the contemporaneous time records submitted] is true and accurate to the best of [her] knowledge").

(S.D.N.Y. 1996) (although that the attorney "estimated the time he expended on the basis of his notes and the services he performed . . . is not an adequate substitute for contemporaneous time records . . . , given the circumstances of this case, an award of some fees would be in order").

However, a 15% reduction does not accurately reflect the scope of the deficiency of the DOL's time records. The DOL's representatives were perfectly capable of contemporaneously recording the nature of their work—which thereby would have provided the Court with the most reliable tool to evaluate the reasonableness of the DOL's fees request—yet they chose not to. This they were free to do. However, it was a choice with necessary implications as to the DOL's election to move for attorneys' fees. *See Broadcast Music, Inc.*, 919 F. Supp. at 661 (reducing fee by 50% where movant did not keep contemporaneous time records and reconstructed his time via a "hindsight review"). The Court finds a 50% reduction to be more reflective of the deficiency in the DOL's time records and will reduce its reimbursable attorneys' fees as such.

### 2.    Vague Descriptions of Work Performed[14]

"Fees should not be awarded for time entries when the corresponding description of work performed is vague and therefore not susceptible to a determination of whether the time [billed] was reasonably expended." *Conn. Hosp. Ass'n v. O'Neill*, 891 F. Supp. 687, 690 (D. Conn. 1994) (internal quotation omitted). To address vague entries, "the Second Circuit has approved a percentage reduction method." *Rand-Whitney*, 2006 WL 2839236, at *16. However, a court may use context to clarify otherwise vague entries. *Id.*

---

[14]   LaserShip also conclusorily argues that the DOL's entries are redundant. Doc. 15, at 5. It does not, however, identify which entries are redundant, or how they are so. To the extent it is referring to the overlap in work between Attorneys Salzberg and Pedulla, the Court, as discussed *supra*, is denying any recovery as to Attorney Pedulla's work in light of this concern.

LaserShip argues that "nearly every entry is impermissibly vague under the standard described in *Rand-Whitney*." Doc. 15, at 6. It identifies certain examples, such as: "review case file"; "legal research"; "[f]iling documents"; "[r]eview of documents"; and others. *Id.* at 6-7.

Although in isolation these descriptions may be somewhat vague, the Court disagrees that they are as vague, in context, as LaserShip describes. The DOL explains quite aptly why the context of the instant litigation renders such otherwise vague entries as "susceptible to a determination of whether the time [billed] was reasonably expended":

> Given that the substance of this case involves only the Secretary's Petition for Enforcement of Administrative Subpoena Duces Tecum, all of the Secretary's entries for which he seeks fees relate to that Petition, with the exception of the entries for time related to the fee application itself. This is not a circumstance in which the Court or Respondent must determine whether certain time entries relate to the particular work at issue in the fee petition. Unlike with a discovery-related motion, in this action there is no underlying case apart from the enforcement of the subpoena on which the Secretary's attorneys could be expending time. Accordingly, the Court and LaserShip can determine from the context of the Secretary's time entries that activities such as reviewing files or documents, working on briefs, and conversing with the District Director of the Wage and Hour Division relate to the Petition for which the Secretary seeks fees.

Doc. 16, at 7.

The Court agrees that the DOL's descriptors are not necessarily vague in light of the fact that the Court is able to determine that all of the work was done in connection with the matter for which reimbursement is warranted. Admittedly, the DOL could have been more specific in certain of its entries (a fault likely due to the fact that it reconstructed these descriptions rather than recording them contemporaneously, a factor for which the Court has already imposed a significant downward adjustment). However, the DOL's entries, for the most part, have provided the Court with the ability to determine whether the requests are reasonable.

-15-

That said, the Court notes that certain entries lump together activities such that the Court cannot independently assess whether each activity was conducted for a reasonable time.  For example, on February 24, 2015, Attorney Salzberg spent 3.5 hours doing all of the following:

> Discussions with WH Counsel, Researching facts, communication/phone meetings with WH investigator, WH Assistant District Director, WH District Director, and WH Regional Administrator, Assisting in Drafting Affidavits for Investigator, WH Assistant District Director, WH District Director, and Regional Administrator, further communications and further revisions of Affidavits.

Doc. 12-1 Ex. B.  Other examples of group billing exist within Attorney Salzberg's entries, and are also included in Attorney Hyman's entries [Doc. 12-4 Ex. B].[15]  At least one court has determined that such "multiple activity descriptions" do not require a percentage reduction where each task, as here, "can be attributed to the same issue." *Conn. Hosp.*, 891 F. Supp. at 691.  However, in light of the fairly bare descriptions identified by LaserShip, as well as the group billing of a number of the entries, the Court agrees that a small reduction for vagueness is warranted.  A number of courts have reduced hours for vagueness at a rate of 10%. *See*, *e.g.*, *U.S. Football League v. Nat'l Football League*, 704 F. Supp. 474, 477 (S.D.N.Y. 1989); *Conn Hosp.*, 891 F. Supp. at 691; *Gonzalez v. Town of Stratford*, 830 F. Supp. 111, 114 (D. Conn. 1992).  The DOL proposes a reduction of 3%. Doc. 16, at 7-8.  LaserShip offers no specific discount.  In light of the above, the Court believes a further 5% reduction is warranted in this case.[16]

---

[15]  Only one of Paralegal Quinn's entries truly contain multiple tasks, that of March 31, which seemed to include two tasks comprising her 1.5 hours of work that day.  Doc. 12-5 Ex. C.

[16]  LaserShip also makes the puzzling argument that the DOL should not be able to recover for time spent preparing for a hearing in this matter because the Court never scheduled a hearing.  Doc. 15, at 7-8.  As discussed, however, proffered hours are reasonable if "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant*, 973 F.2d at 99.  It cannot be said that an attorney acts unreasonably in

-16-

### 3.    Relation of Fee Award to Other Cases

LaserShip argues at length that the DOL's overall request "is wildly out of line with what other courts in this jurisdiction have approved in the context of routine discovery disputes," and that "there is not a single attorney in Connecticut who would have spent anything close to 90 hours of attorney time in moving to compel a response to a single request for production of phone numbers." Doc. 15, at 2-3 (referring to this litigation as a "very routine discovery dispute").

LaserShip's argument relies on a mischaracterization of the DOL's Petition.  This action is neither a "routine discovery dispute," nor a motion to compel—it is a subpoena enforcement proceeding.  As the DOL correctly argues, "[i]n contrast to the [four] discovery-related" disputes upon which LaserShip relies as benchmarks for a reasonable attorneys' fees award in this district, "the present action required the Secretary to initiate an entirely new case" and submit extensive and detailed briefing and affidavits in order to meet the distinct standard required for the enforcement of an administrative subpoena.  Doc. 16, at 5

This analysis highlights the fundamental problem with LaserShip's benchmark argument. The proper amount of attorneys' fees to be awarded in a given case depends heavily on the unique factual circumstances leading to the award of such fees.  *See Chen v. Chen Qualified Settlement Fund*, 552 F.3d 218, 225 (2d Cir. 2009) ("'attorney's fees are dependent on the unique facts of each case'") (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)).  Accordingly, the only benchmark by which a district court is beholden when awarding attorneys' fees is that of reasonableness.  *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546,

---

preparing for a requested hearing prior to it being scheduled.

-17-

562 (1986).   And, as discussed *supra*, this Court views the DOL's expended hours as mostly reasonable.

That said, it is undoubtedly true that a review of what fees have been awarded in similar cases may assist the Court in determining what fees are reasonable in a given case.  Here, however, LaserShip has offered no such similar cases.  It has identified no instances of fee awards in cases in which a fees movant was forced to bring an entirely new litigation to seek enforcement of a subpoena.  Rather, LaserShip has relied on fee awards in cases involving pre-trial discovery motions, disputes in which the moving party faces a distinct standard of proof, and different procedural requirements, from that of the DOL here.  Without reference to authority, this Court cannot determine that the legal work required to be expended in meeting those pre-trial discovery standards is an equivalent benchmark for the work required to meet the standard for enforcement of an administrative subpoena and its procedural requirements.[17]

LaserShip's benchmark argument has failed to demonstrate that a further adjustment to the DOL's fees request is warranted.

### E.    Conclusion as to Attorneys' Fees

The DOL identified $20,525 in documented reasonable attorneys' fees, a number that the Court has determined should be reduced by 55% (50% for the lack of contemporaneous time

---

[17]  The Court also notes that LaserShip has not even identified that the instant case will be "wildly out of line" with each of its supposed benchmarks.  The most recent fee award identified by LaserShip [Doc. 15, at 3], issued by Judge Bolden in *Learning Care Group, Inc. v. Armetta*, 2015 WL 5194082, at *1 (D. Conn. Sept. 2, 2015), involved a granting of $10,205 in attorneys' fees, which is more than the attorneys' fees this Court is awarding the DOL.  Further, in *Armetta*, the non-movant argued, similar as to LaserShip's argument, that the amount sought was "'excessive bordering on unbelievable.'" *Id.*, at *3.  And Judge Bolden did in fact reduce the requested award, but not on the basis of any relative considerations; he reduced the award only with respect to entries that did "not appear to reflect only work done 'making' the Plaintiffs' Motion to Compel.'" *Id.*  Here, the Court has determined that each of the entries for which the DOL seeks reimbursement reflect work done making the Petition (or the fees request).

records as to the nature of the work performed, and 5% as to the vagueness of certain of its time entries).  The DOL is therefore entitled to $9,236.25 in reimbursement for attorneys' fees.

**VI.    Costs**

The DOL seeks reimbursement of $75 for service of the petition on LaserShip, and $158.15 in expenses incurred by its investigator to travel to meet with Attorneys Salzberg and Pedulla.  Doc. 12, at 10.  The DOL has properly documented these costs.  *See* Doc. 12-5 Ex. A; Doc. 12-6 ¶ 6. LaserShip raises no meritorious objection to the expenses.[18]  The DOL is entitled to them.

**VII.   Conclusion**

The Respondent is ORDERED to transmit to the Petitioner the amount of **$9,469.40**, representing $9,236.25 in attorneys' fees and $233.15 in expenses.  The Respondent is further directed to certify with the Court, in the form of an affidavit, its full compliance with the terms of this ruling on or before December 29, 2015, or otherwise inform the Court why compliance by that date is not feasible.

**It is SO ORDERED.**

**Dated: New Haven, Connecticut**
**December 14, 2015**

　　　　　　　　　　　　　　　　　　　_/s/ Charles S. Haight, Jr._
　　　　　　　　　　　　　　　　　　　**Charles S. Haight, Jr.**
　　　　　　　　　　　　　　　　　　　**Senior United States District Judge**

---

[18]  It only objects to the investigator's travel expenses on the basis that it was an unnecessary cost given that the travel was done in connection with preparing for testimony.  Doc. 15, at 8.  The Court has already ruled that this line of objection is without merit. *See supra*, n.16.